**Kurt NUGENT, Appellant,**

v.

**VOEST–ALPINE INTERNATIONAL CORPORATION, et al., Appellees.**

**No. 13–92–109–CV.**

Court of Appeals of Texas, Corpus Christi.

June 10, 1993.

Van McFarland, Houston, for appellant.

A. Lee McClain, John L. Schoust, Houston, for appellees.

Before SEERDEN, KENNEDY and DORSEY, JJ.

## OPINION

SEERDEN, Justice.

This is a breach of contract case involving piercing the corporate veil and a discharge in bankruptcy. By five points of error, Nugent complains generally of no evidence or insufficient evidence to support the court's finding that he was the alter ego of Austro Pipe, and that the trial court erred in disregarding his discharge in bankruptcy, in finding a breach of the release agreement, and in awarding attorneys' fees. We reverse and render.

In 1984, appellees Voest–Alpine International Corporation, W. Richard Doerre, Hilkka K. Witt, and Hans Schumacher entered into an agreement with Austro Pipe Corporation and appellant Kurt Nugent, Austro Pipe's sole shareholder and officer. The agreement released all existing claims between the parties. In 1985, Austro Pipe sued appellees for conversion of oil field pipe. Appellees counterclaimed against the corporation for breach of the release agreement. In 1987, Nugent received a discharge in bankruptcy. Austro Pipe's conversion case non-suited in 1989. Immediately thereafter, appellees filed a third-party action for breach of contract against Nugent on the theory of alter ego.

The trial court entered the following findings of fact and conclusions of law: 1) Austro Pipe breached the 1984 release agreement by filing a conversion suit against appellees; 2) Nugent, the president and sole shareholder of Austro Pipe, did not a) pay current corporation franchise taxes, b) hold shareholder, officer, or director meetings on a regular basis, c) maintain bank accounts separate and apart from his own personal bank accounts, or d) keep accurate minutes of shareholder, officer or director meetings; 3) Nugent was the alter ego of Austro Pipe; 4) appellees did not discover Nugent's "alter ego" activities until after Nugent had been discharged in bankruptcy; and, 5) Nugent's bankruptcy did not discharge him from liability. The court held that through the 1984 release agreement Austro Pipe indemnified appellees for any breaches of contract by the corporation. The court awarded judgment against Austro Pipe and Nugent, individually, in the amount of $401,410.97, plus court costs and interest.

By his second point of error, Nugent contends that the trial court erred in awarding judgment to appellees because he was discharged in bankruptcy in 1987 after the claim arose, and that any subsequent proceedings against him would be void. Nugent urges that because the claim existed at the time of bankruptcy, it was discharged. Appellees assert that the alter ego liability, which is not a claim or a cause of action, arose after the alleged discharge in bankruptcy and was not discharged. Appellees also contend that since alter ego is not a cause of action, there is no statute of limitations or an exact time at which alter ego arises. Further, appellees urge that they were not "creditors" who could seek a determination from the bankruptcy court that the debt was non-dischargeable.

■ The threshold issue in this case concerns when appellees' claim against Nugent arose for purposes of discharge in bankruptcy. Federal law and the bankruptcy court's exercise of equitable powers control whether the claim is allowed. *In re Ford*, 125 B.R. 735, 737 (E.D.Tex.1991). Section 727(b) of the Bankruptcy Code states, in relevant part, that "[e]xcept as provided in section 523 of this title,[1] a dis-

---

1. On appeal, no exceptions to discharge under section 523 of the Bankruptcy Code were argued by appellees.

charge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter...." 11 U.S.C.A. § 727(b) (1979).

■ The Bankruptcy Code defines a creditor as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor...." 11 U.S.C.A. § 101(10)(A) (1993). Section 101(12) of the Bankruptcy Code defines "debt" as liability on a claim. A "claim" for purposes of bankruptcy includes the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C.A. § 101(5)(A) (1993). Congress has expressed a clear intention that the definition of "claim" is to be interpreted broadly. *In re Jensen*, 127 B.R. 27, 29 (9th Cir.BAP 1991) (citing to 1978 U.S.Code Cong. & Admin.News, 5787, 5807–08, 5963, 6266). The Code does not define when a right to payment arises.

■ The underlying cause of action was established when Austro Pipe filed the conversion suit against appellees in 1985. Nugent, the sole shareholder and officer of Austro Pipe, testified that all of his alleged alter ego activities dated back to 1982 and continued through the time of trial. We conclude that at the time of the filing of the suit, based upon either the breach of the release agreement or the alter ego theory, appellees had a claim against Nugent, as defined in section 101(5) of the Bankruptcy Code.

Appellees urge that when the activities are discovered is an important consideration in determining the alter ego status of an individual. Appellees rely on *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex.1990). In *Matthews*, the plaintiff contended that the president and sole shareholder had stripped the corporation of its assets to avoid paying a judgment. *Id.* at 692. The *Matthews* court recognized that a breach of contract cause of action existed against the corporation and tolled limitations as to the corporation's alter ego until

final judgment. *Id.* at 694. We conclude that the *Matthews* case is not supportive of the issues in the case before us.

While the time when appellees discovered Nugent's activities may be a consideration in determining alter ego status and whether to apply the statute of limitations, it is not a factor to be considered in determining when the right to payment arose under the Bankruptcy Code. A later determination of facts present at the time of the breach does not change when the claim or right to payment arose. We conclude the cause of action and the liability against Nugent, as well as the corporation, arose before the bankruptcy petition was filed.

Further, appellees argue that even if Nugent's liability arose pre-petition, the bankruptcy discharge order is invalid because the bankruptcy court lacked subject matter jurisdiction. Appellees rely on section 109(g) that provides:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C.A. § 109(g) (1993).

■ Nugent filed a Chapter 13 case (adjustment of debts proceeding) in 1986 and later a Chapter 7 case (liquidation proceeding) without disclosing the existence of the pending Chapter 13 case. Although section 727(a)(8) prohibits entry of a Chapter 7 discharge more frequently than once every six years, nothing in the Code expressly prohibits maintaining concurrent petitions under different chapters. 11 U.S.C.A. 727(a)(8) (1979); *see In re Janice R. Keen*, 121 B.R. 513, 513 (1990).

The Chapter 7 case was processed and culminated in a "form order of discharge" which was entered on September 30, 1987. The Chapter 13 case had not been dismissed by the court for willful failure of the debtor to abide by orders of the court or to appear before the court in proper prosecution of the case. Nugent neither requested nor obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay. We conclude that section 109(g) does not apply.

Additionally, appellees urge that the prohibition against maintaining two cases simultaneously is inherent and direct and is jurisdictional in nature, and the discharge should be considered void in that the basic jurisdictional requirements and qualifications to be a debtor were not met. Appellees rely on the rule of *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), as cited in *Keen*. "Relying on the general principle that the law will not tolerate two suits at the same time for the same cause, [the Court] similarly rejected the notion that a debtor may seek to discharge the same debts in more than one bankruptcy case." *Keen*, 121 B.R. at 514 (citing *Freshman*, 269 U.S. 121, 46 S.Ct. 41).

The facts in *Freshman* are distinguishable from the present facts. In *Freshman*, two voluntary bankruptcy petitions were filed by the debtor in federal district court. *Freshman*, 269 U.S. at 122, 46 S.Ct. at 41. A number of the same creditors were listed in both petitions. *Id.* The district court took judicial notice of the pendency of the former application and denied the second application, but only in respect to the creditors included in the first petition. *Id.* The district court granted the discharge as to the additional creditors, and denied, by a separate order, the discharge sought under the original proceeding. *Id.* The United States Supreme Court concluded that the "pendency of the first application precluded a consideration of the second in respect of the same debts." *Id.*

In the present case, appellees' debts were listed in neither bankruptcy proceeding. No judicial notice of the former application was noted by the bankruptcy court. The bankruptcy court granted only one discharge order: the Chapter 7 case. Further, the concurrent petitions Nugent filed under different chapters were not challenged by appellees in any earlier proceeding. We conclude that there is no jurisdictional issue on appeal. Nugent's second point of error is sustained.

Having disposed of this cause on the basis that appellees' claim against Nugent arose before his bankruptcy petition was filed and was discharged in bankruptcy, we need not address the remaining points of error. *See* Tex.R.App.P. 90(a).

We REVERSE the judgment of the trial court and RENDER that appellees take nothing.